**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TEKNO PRODUCTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GLOVE TRENDS, INC., ARA OHANIAN, and ALICE SEVAN OHANIAN,<br><br>Defendants. | Civil Action No.<br><br>19-91 (SDW) (LDW)<br><br>**REPORT AND RECOMMENDATION** |

## LEDA DUNN WETTRE, United States Magistrate Judge

Before the Court are *pro se* defendant Ara Ohanian's motion to dismiss for insufficient service of process (ECF No. 27); *pro se* defendant Alice Sevan Ohanian's motions to dismiss for insufficient service of process and for lack of personal jurisdiction (ECF Nos. 29, 44); and plaintiff Tekno Products, Inc.'s motion for substituted service on Ara Ohanian (ECF No. 50). The Honorable Susan D. Wigenton, U.S.D.J. referred the motions to the undersigned for a Report and Recommendation. These motions are decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. Having considered the parties' written submissions and for good cause shown, the Court recommends that defendants' motions to dismiss for insufficient service of process be **DENIED**, plaintiff's motion for substituted service be **TERMINATED AS MOOT**, and Alice Sevan Ohanian's motion to dismiss for lack of personal jurisdiction be **GRANTED**.

### I.   BACKGROUND

Plaintiff Tekno Products markets and sells Garden Genie gloves, which are gardening gloves with fingertip extensions for digging. (Am. Compl. ¶ 16, ECF No. 22). Tekno holds copyrights for the box in which it packages Garden Genie gloves and for an advertising video. (*Id.*

¶¶ 39, 46). Tekno also claims common law trademark rights in and to the words Garden Genie and the Garden Genie trade dress. (*Id.* ¶¶ 74-75). Defendants Ara Ohanian and Alice Sevan Ohanian ("Alice Sevan") are co-inventors of competing Honey Badger digging gloves. (*Id.* ¶¶ 5-6, 17).[1]

Ara Ohanian has been marketing "patent pending" Honey Badger gloves since 2013. (*Id.* ¶ 18). When plaintiff decided to begin selling its own Garden Genie digging gloves, it reached out to Ara Ohanian to discuss a possible business relationship; ultimately, it decided not to do business with Ara Ohanian. (*Id.* ¶¶ 19-20). Plaintiff alleges that Ara Ohanian retaliated against Tekno's rejection by: (1) publishing a number of similar articles on the internet (using various aliases) accusing Tekno's owners of being "scoundrels" from "Jew Jersey" (*id.* ¶ 25); (2) opposing Tekno's application to register the Garden Genie trademark with the United States Patent and Trademark Office and filing his own trademark application for Garden Genie (*id.* ¶¶ 26, 28, 31); and (3) setting up a website from which he sold counterfeit Garden Genie gloves using Tekno's copyrighted packaging and advertising video (*id.* ¶¶ 29, 33-34). Plaintiff further alleges that Ara Ohanian marketed his Honey Badger gloves as "patent pending" years before he filed a patent application for the product. (*Id.* ¶¶ 18, 32). In an amended complaint dated April 1, 2019, plaintiff brings claims for copyright infringement, false patent marking, New Jersey trade libel, unfair competition and false designation of origin, trademark infringement, unjust enrichment, conspiracy, and spoliation of evidence.

---

[1] Ara Ohanian also owns and operates defendant Glove Trends Inc., a Nevada corporation against which default has been entered for failure to retain counsel. (ECF Nos. 39, 40).

Ara Ohanian and Alice Sevan have filed numerous, repetitive objections to the claims asserted, predominantly challenging service of process and the existence of personal jurisdiction in New Jersey.

## II.     DISCUSSION

### A.     Insufficient Service of Process

Rule 12(b)(5) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where plaintiff fails to effect service of process. "Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). Here, plaintiff bears the burden of establishing valid service. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

### 1.     Alice Sevan

Alice Sevan is a Canadian citizen who resides in Montreal, Quebec. (Am. Compl. ¶ 6). With respect to the initial complaint, plaintiff submitted the affidavit of Thierry LaMarche, a "huissier de justice," translated as "bailiff," who stated under oath that he is "an Officer of Justice authorized by the law of the Province of Quebec to effect service of legal process" and that he completed personal service on Alice Sevan at her home in Montreal on January 16, 2019. (LaMarche Aff. of Service, ECF No. 12). However, Alice Sevan denies personal service, arguing that the complaint was left in her mailbox. Given the dispute over service of the initial complaint, plaintiff hired another bailiff in Quebec to effect service of the amended complaint. Plaintiff submitted the affidavit of Martin Dupuis, who affirmed that on "May 1st at 7:15 P.M. I presented myself at the door of Ms. Ohanian . . . . She opened the door and refused the documents. I served

her [the summons, amended complaint, and its exhibits] by leaving them in her mailbox, in a sealed envelope." (Dupuis Aff. of Service, ECF No. 43). The bailiff further affirmed that he endorsed the date and time of service over his signature on the back of the documents served. (*Id.*). Alice Sevan agrees that the operative pleading was left in her mailbox, but nonetheless argues that service was improper.

Rule 4(f)(1) of the Federal Rules of Civil Procedure provides for service on an individual in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents," of which the United States and Canada are signatories. The principle mechanism for service of process under the Hague Convention is through the Central Authority of the relevant signatory State. *See* Hague Convention arts. 2-7, Nov. 15, 1965, 20 U.S.T. 361. However, signatories to the Hague Convention can also consent to alternate methods of service, including service via diplomatic and consular channels, postal channels, and – of relevance here – through judicial officers of the State. Specifically, Article 10(c) of the Hague Convention provides that as long as the "State of destination does not object, the present Convention shall not interfere with . . . the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."

There is no dispute that the Hague Convention authorizes personal service by a huissier/bailiff in Quebec. Indeed, Canada's accession to the Hague Convention explicitly states that it does not object to "[s]ervice through judicial officers, notably 'huissiers', etc. of the requested State." Canada's Accession to the Hague Convention, declaration III, 1529 U.N.T.S. 499 (1989). *See O'Keefe v. St. Lawrence & Atl. R.R. Co.*, 167 F.R.D. 30, 32 (D. Vt. 1996) ("The

4

normal procedure in Canada is for personal service to be done by a sheriff or a 'huissier' in Quebec."). Moreover, Quebec's Code of Civil Procedure includes a provision for service by huissier/bailiff:

> Service or notification by bailiff is made by delivering the document to the addressee personally or, if this cannot be done, by leaving it at the addressee's domicile or residence with a person who appears to be capable of receiving it. If the document cannot be so delivered, it must be left at an appropriate place in a sealed envelope or in any other form that protects its confidentiality. If the document is being served, the bailiff signs and stamps the document and records the date and time on it. If the addressee refuses to accept the document, the bailiff records the refusal on the document, which is deemed to have been served or notified personally at the time of the refusal. The bailiff must leave the document on the premises by any appropriate means.

Code of Civil Procedure, R.S.Q., c. C-25.01 § 116 (Can.).

The affidavit of Thierry LaMarche, a disinterested bailiff, creates a presumption of valid service which Alice Sevan's contradictory and unsworn denials are insufficient to rebut. *See Ramada Worldwide Inc. v. Shriji Krupa, LLC*, Civ. A. No. 07-2726, 2013 WL 1903295, at *3 (D.N.J. Apr. 17, 2013) ("For a party to rebut valid service accompanied by an affidavit, it must submit sufficient evidence to do so, and may not rely merely on statements by interested parties."); *The Closeout Grp.!, Inc. v. Venator Elecs. Sales & Serv., Ltd.*, Civ. A. No. 07-5292, 2009 WL 2431448, at *3 (E.D. Pa. Aug. 6, 2009) (process server's affirmation that he left documents on doorstep established proper service of process in Canada despite defendant's denial). But to the extent there is any doubt that Alice Sevan was served with the initial complaint, review of the affidavit of service of Martin Dupuis confirms that he properly completed service of the amended complaint in accordance with Quebec's statute. As Alice Sevan refused to accept the operative pleading, the bailiff placed the documents in an appropriate place – her mailbox – and in an appropriate manner – in a sealed envelope bearing his signature and the date and time of service.

Accordingly, Alice Sevan is deemed to have been personally served under the laws of Quebec and in accordance with the Hague Convention.

Alice Sevan's objection that the documents were not translated into French is unavailing. "Quebec only requires translation into French when the recipient does not understand the language of the document, when the sender has not requested allowance for an English translation and, importantly, only when service occurs through the Central Authority under Article 5." *Girafa.com, Inc. v. Smartdevil Inc.*, 728 F. Supp. 2d 537, 543 (D. Del. 2010). *Cf. Heredia v. Transport S.A.S., Inc.*, 101 F. Supp. 2d 158, 161-62 (S.D.N.Y. 2000) (no French translation requirement for documents served on a person in Quebec by mail under Article 10(a) of the Hague Convention). As discussed above, service of process was completed by bailiff pursuant to Article 10 of the Hague Convention, and not through Canada's Central Authority. There is no suggestion that French is Alice Sevan's native language or that she is unable to read, write, or understand English, and she has engaged in extensive motion practice in fluent English. The Court has no concerns about the adequacy of notice or Alice Sevan's ability to understand and participate in these proceedings.

### 2. Ara Ohanian

Ara Ohanian is a Canadian citizen who resides in Doraville, Georgia. (Am. Comp. ¶ 5). Plaintiff submitted the affidavits of Will Acree and Margaret Ruddock, process servers who made a total of nine attempts to serve Ara Ohanian with the summons and initial complaint at his home in Doraville, Georgia throughout January 2019. (Acree Aff. of Attempted Service, ECF No. 37-2; Ruddock Aff. of Non Service, ECF No. 37-2). Mr. Acree also attempted to deliver the summons and complaint to Ara Ohanian at an alternate address in Alpharetta, Georgia. (Acree Aff.). Furthermore, on January 11, 2019, Mr. Acree spoke with Ara Ohanian by phone to verify his

address for service, but he reportedly taunted the process server to try to find him. (*Id.*). Finally, on January 15, 2019, plaintiff sent Ara Ohanian copies of the complaint, waiver of service forms, and a self-addressed stamped envelope by certified mail, return receipt requested, and by regular mail; plaintiff submitted proof of delivery by regular mail on January 18, 2019. (DeFrancesco Decl., Ex. B, ECF No. 37-2). Plaintiff additionally sent Ara Ohanian the amended complaint by certified mail, return receipt requested, and regular mail; although defendant did not accept or retrieve the certified mail, the amended complaint sent by regular mail was delivered on June 10, 2019. (DeFrancesco Decl., Exs. B-C, ECF No. 56). The Court notes that although Ara Ohanian insists on evading service, he has undoubtedly received notice of the claims against him. He has not denied receipt of the initial or amended complaints by mail. He filed a consent to receive service of documents and notice of electronic filings via the Court's electronic filing system (ECF No. 13), has contacted the Court by phone and letter many times, appeared at a telephonic case management conference, and is actively engaged in his own defense. Moreover, at the June 6, 2019 telephone conference, Ara Ohanian confirmed to the Court that he lives at the address where Mr. Acree and Ms. Ruddock attempted to effectuate personal service and where plaintiff mailed the complaint, waivers of service, and amended complaint.

Rule 4(e)(1) of the Federal Rules of Civil Procedure provides for service on an individual within a judicial district of the United States "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Personal service is the preferred method in New Jersey. N.J. Ct. R. 4:4-4(a). However, New Jersey law includes two provisions for service of process by mail in lieu of personal service. First, "if a plaintiff files an affidavit of diligent effort . . . that establishes that 'despite diligent effort and inquiry personal service cannot be made' within the state of New Jersey

. . . then service may be made by simultaneously sending copies of the summons and complaint by registered or certified mail, return receipt requested, and by ordinary mail." *Royal v. Dabney*, Civ. A. No. 16-2535, 2017 WL 1758061, at *2 (D.N.J. May 3, 2017) (quoting N.J. Ct. R. 4:4-4(b)(1)(C)). "If service can be made by any of the modes provided by [New Jersey Court Rule 4:4-4(b)], no court order shall be necessary." N.J. Ct. R. 4:4-4(b)(3). Additionally, "a plaintiff may attempt to serve a defendant in the first instance by 'registered, certified or ordinary mail,' but this service is only considered valid where 'the defendant answers the complaint or otherwise appears in response thereto' within 60 days following mailed service." *Royal*, 2017 WL 1758061, at *2 (quoting N.J. Ct. R. 4:4-4(c)).

Having reviewed the April 30, 2019 Declaration of Jason L. DeFrancesco and the attached affidavits of the process servers who attempted personal service on Ara Ohanian, the Court is satisfied that plaintiff acted with good faith and reasonable diligence in its numerous attempts to deliver the summons and initial complaint into Ara Ohanian's hands. Unable to do so, plaintiff properly completed service by certified and regular mail after its initial attempts at personal service failed, without need for a Court order and in accordance with New Jersey Court Rule 4:4-4(b)(1)(C). *See Citibank, N.A. v. Russo*, 334 N.J. Super. 346, 352 (App. Div. 2000) ("Plaintiff properly made service by mail pursuant to [Rule 4:4-4(b)(1)(C)], because the Sheriff had previously attempted to make personal service and reported that defendants were attempting to evade process."); *see also* N.J. Ct. R. 4:4-3(a) ("[I]f the addressee refuses to claim or accept delivery of registered mail and if the ordinary mailing is not returned, the simultaneous mailing shall constitute effective service."). Additionally, Ara Ohanian began filing objections to the claims asserted on January 28, 2019 and filed his consent to receive documents electronically on February 15, 2019, which the Court construes as an appearance *pro se* that occurred within 60 days

8

of the mailing of the initial complaint; thus, plaintiff also completed service by mail in accordance with New Jersey Court Rule 4:4-4(c). As plaintiff has already completed service of the initial and amended complaint by mail, the motion for substitute service is moot.

### 3. Sanctions

Finally, plaintiff requests sanctions in the form of reimbursed fees and costs related to service on defendants and responding to their motions to dismiss for improper service of process under 28 U.S.C. § 1927 or the Court's inherent authority. (ECF No. 37). Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." It remains an open question in this Circuit whether the Court has authority to sanction a *pro se* party under § 1927. *See Inst. for Motivational Living, Inc. v. Doulos Inst. for Strategic Consulting, Inc.*, 110 F. App'x 283, 287 (3d Cir. 2004). In any event, "section 1927 requires a court to find an attorney has: (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Great Western Mining & Mineral Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 758 (D.N.J. 2012). While the Court does not countenance defendants' conduct, their attempts to evade service of process and numerous filings are not so indicative of bad faith as to warrant monetary sanctions.

Similarly, plaintiff requests that Ara Ohanian be sanctioned as a vexatious litigant and restricted from filing without leave of Court. "[A] District Court may enjoin a pro se litigant from future filings so long as the injunction complies with three requirements: (1) the litigant must be continually abusing the judicial process; (2) the litigant must be given notice of the potential

9

injunction and an opportunity to oppose the court's order; and (3) the injunction must be narrowly tailored to fit the specific circumstances of the case." *Grossberger v. Ruane*, 535 F. App'x 84, 86 (3d Cir. 2013) (per curiam). As plaintiff has not established any of the predicates for a filing injunction, the request for such sanction should be denied at this time. However, Ara Ohanian is hereby put on notice that any future abusive conduct or failure to conduct his defense in a professional and cooperative manner may not be treated so leniently.

### B.     Lack of Personal Jurisdiction

Alice Sevan additionally moves to dismiss the claims against her for lack of personal jurisdiction. When a defendant challenges a Court's exercise of personal jurisdiction, plaintiff bears the burden to prove that jurisdiction is proper. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330-31 (3d Cir. 2009). Where the district court does not hold an evidentiary hearing, plaintiff must make only a prima facie showing of personal jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Under a prima facie standard, "the plaintiff's allegations are presumed true and all factual disputes are resolved in the plaintiff's favor." *LaSala v. Marfin Popular Bank Pub. Co., Ltd.*, 410 F. App'x 474, 476 (3d Cir. 2011). A plaintiff meets this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

A federal court in New Jersey exercises jurisdiction to the extent permitted by New Jersey law. *Miller Yacht Sales*, 384 F.3d at 96. New Jersey's long-arm statute permits the exercise of jurisdiction over non-residents "'to the uttermost limits permitted by the United States Constitution.'" *Charles Gendler & Co., Inc. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986) (quoting *Avdel Corp. v. Mecure*, 58 N.J. 264, 268 (1971)). Therefore, "we ask whether, under the

Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation omitted).

The Court can assert either general or specific jurisdiction over a defendant. *Bristol-Myers Squibb Co. v. Super. Ct. Cal.*, 137 S. Ct. 1773, 1780 (2017). "A court with general jurisdiction may hear *any* claim against that defendant." *Id.* "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). As Alice Sevan does not reside in New Jersey, there is no basis for the Court's exercise of general jurisdiction over her. Specific personal jurisdiction, on the other hand, exists when a lawsuit "'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

Plaintiff argues that specific jurisdiction over Alice Sevan arises based on the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), which allows a court to "exercise jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state." *Carteret Savings Bank v. Shusan*, 954 F.2d 141, 148 (3d Cir. 1992). Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998). Personal jurisdiction under the *Calder* effects test will lie where: "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as

11

a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Id.* at 265-66. "Only if the 'expressly aimed' element of the effects test is met need we consider the other two elements." *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). "To establish that the defendant 'expressly aimed' his conduct, the plaintiff has to demonstrate 'the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Id.* at 297-98 (quoting *IMO Indus.*, 155 F.3d at 266).

The sole substantive allegation against Alice Sevan is that she signed a U.S. patent application for digging gloves dated March 2, 2017 to assist Ara Ohanian in obtaining expedited review of the application in support of his marking gloves as "patent pending." (Am. Compl. ¶¶ 6, 12, 91). Put simply, nothing in the complaint establishes any contacts between Alice Sevan and New Jersey. Nowhere in the amended complaint does plaintiff allege that Alice Sevan signed the patent application with a specific intent to harm Tekno in New Jersey, or that she expressly aimed any conduct, tortious or otherwise, at the forum state. *See Voltaix, LLC v. NanoVoltaix, Inc.*, Civ. A. No. 09-142, 2009 WL 3230887, at *3 (D.N.J. Oct. 1, 2009) ("[T]he 'expressly aimed' prong of *Calder* has typically only been found satisfied when it was alleged that a defendant had a specific intent to harm plaintiff in the forum in question or directly targeted some of its activities to the forum."). There is no allegation that she has ever visited New Jersey, communicated with Tekno or anyone else in New Jersey, or that she signed the patent application in New Jersey. There is no allegation that she is involved with the Glove Trends corporate entity or in any way participated in the marketing or sale of digging gloves in New Jersey. Indeed, there are no allegations from which the Court could infer that Alice Sevan even knows that Tekno is incorporated and

12

headquartered in New Jersey and would be harmed in New Jersey as a result of her signing the patent application. *See IMO Indus.*, 155 F.3d at 265 ("[T]he *Calder* 'effects test' can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant *expressly aimed* its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity. Simply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself to meet this requirement."). As plaintiff has failed to allege any intentional conduct by Alice Seven targeting the forum, it cannot establish personal jurisdiction in New Jersey under *Calder*. Having presented no factual allegations "that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state," plaintiff's request for jurisdictional discovery as to Alice Sevan is denied. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quotations and alteration omitted).

### III. CONCLUSION

For the foregoing reasons, the Court recommends that defendants' motions to dismiss for insufficient service of process be **DENIED**, plaintiff's motion for substituted service be **TERMINATED AS MOOT**, and Alice Sevan Ohanian's motion to dismiss for lack of personal jurisdiction be **GRANTED**. The parties are hereby advised that, pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, they have 14 days after being served with a copy of this Report

and Recommendation to file specific written objections to the Honorable Susan D. Wigenton, U.S.D.J.

Dated:      July 25, 2019

*Leda D. Wettre*

Hon. Leda Dunn Wettre
United States Magistrate Judge

Original:   Clerk of the Court
cc:         Hon. Susan D. Wigenton, U.S.D.J.
            All parties